DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT
_____

BARRY HAUGHT and WHITBURN, LLC,

Appellants,

v.

EAGLE PALMS HOMEOWNERS ASSOCIATION, INC.,

Appellee.

No. 2D2025-1403
_____

August 7, 2026

Appeal from the Circuit Court for Hillsborough County; Jennifer X.
Gabbard, Judge.

R. Gale Porter, Jr., of Porter Law Group, LLC, Tampa, for Appellants.

Sean P. Bevil, Jonathan J. Ellis, and Clinton S. Morrell of Becker &
Poliakoff, P.A., Tampa, for Appellee.

LABRIT, Judge.

This appeal requires us to decide whether Eagle Palms
Homeowners Association, Inc., can both foreclose a lien for unpaid
assessments and also recover damages for those assessments. The
appellants maintain that it can't based on the terms of the Declaration of
Covenants and Restrictions for their subdivision, while the Association
argues that section 720.3085(1)(c), Florida Statutes (2016), permits it to
pursue both remedies. We agree with the Association, and we affirm the
final judgment awarding damages to the Association.

## Background

The Association is tasked with managing and maintaining a multifamily subdivision in Riverview known as Eagle Palms. In 2014, the Association obtained a judgment of foreclosure against the owners of a townhome within the subdivision, after they had failed to pay regular assessments on the property. The owners subsequently petitioned for bankruptcy so the foreclosure sale was postponed, but the sale ultimately occurred in August 2015.

In the meantime, in or around February 2015, the appellant Barry Haught paid the owners $1,000 for the property, and he obtained a quitclaim deed conveying the property to "Hollagher Group LLC, as Trustee only, under the 9140 Moonlit Meadows Land Trust dated the 6th day of February, 2015." Mr. Haught and his business partners began leasing the townhome shortly thereafter. And despite receiving rental income from their tenants, they did not pay the Association any past due or accrued assessments on the property.

In 2016, the Association filed suit against Mr. Haught and others seeking damages for all unpaid assessments. The Association filed an amended complaint the following year, asserting claims against the defendants for breach of their duty to pay assessments along with several fraud-based claims. The Association alleged that under the Declaration and Florida law, the defendants were jointly and severally liable for all unpaid assessments. *See* § 720.3085(2)(a)–(b). It further alleged that Mr. Haught and others attempted to avoid this obligation and conspired to defraud the Association by forging documents and conveying the property to a nonexistent land trust, all while refusing the Association's repeated demands for payment.

2

The trial court held a bench trial on the Association's claims in September 2023. Mr. Haught and the other defendants raised several defenses, including one based on article V, section 8, of the Declaration. This section provides that when assessments go unpaid, "[t]he Association may bring an action at law against the Owner personally obligated to pay the same, or foreclose the lien against the Lot." The defendants maintained that this section limits the Association's remedies and that to recover unpaid assessments the Association can either bring a civil action "or" foreclose a lien, but not both. Because the Association had already obtained a foreclosure judgment against the prior owners, the defendants argued that the Association had no legal right to pursue damages in a civil action against them.

The Association disagreed. It pointed to section 720.3085(1)(c), which states: "The association may bring an action in its name to foreclose a lien for assessments . . . and may also bring an action to recover a money judgment for the unpaid assessments without waiving any claim of lien." The Association maintained that this statute allowed it to both obtain a money judgment "and" foreclose a lien, so it had a legal right to pursue and recover damages for unpaid assessments despite its foreclosure judgment against the prior owners.

The trial court ultimately ruled in the Association's favor on this issue and as to all counts. It entered final judgment awarding the Association $30,502.44 in damages, for which Mr. Haught and his company Whitburn, LLC, were held jointly and severally liable.[1] Their appeal timely followed.

---

[1] The judgment also held Hollagher Group, LLC—another entity associated with Mr. Haught—jointly and severally liable for the Association's damages. Hollagher Group filed a separate appeal of the

3

**Discussion**

The appellants argue, as they did below, that the Association has no right to maintain an action at law against them. To decide whether it does, we look to the authorities that govern the rights and duties of the Association, which include the Declaration and the applicable statutes in chapter 720. Well-known rules of contractual and statutory interpretation also guide our analysis, including the requirement that we consider the entire text and give effect to all of its parts. *See Fitness Int'l, LLC v. 93 FLRPT, LLC*, 361 So. 3d 914, 920 (Fla. 2d DCA 2023).

**A.      The Governing Texts**

The Declaration was recorded in 2006, and it has since operated as a contract among the Association and the owners of the townhomes within the subdivision. *See Cohn v. Grand Condo. Ass'n*, 62 So. 3d 1120, 1121 (Fla. 2011). The Declaration requires the Association to maintain the common areas and perform other functions, and it empowers the Association to levy and collect assessments so that it can fulfill its duties to the owners. The Declaration likewise obligates owners to pay all assessments that become due, and it establishes mechanisms by which the Association can recoup funds if assessments go unpaid.

The parties focus our attention on article V of the Declaration, which governs assessments. This article states in pertinent part:

> Section 1.  Creation of the Lien and Personal Obligation of Assessments. . . .  [E]ach Owner of any Lot by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association initial or capital contribution fees, annual assessments or charges, cluster building assessments, and special assessments for capital improvements . . . .  The annual and special assessments, together with interest, costs,

final judgment under case number 2D2025-1417. The parties have not sought to consolidate the appeals.

4

and reasonable attorney's fees, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made. Each such assessment, together with interest, costs[,] and reasonable attorney's fees, shall also be the personal obligation of the person or persons who were the Owner of such property at the time when the assessment fell due. . . .

. . . .

Section 8. <u>Effect of Nonpayment of Assessments; Remedies of the Association</u>. Any assessment or installment thereof not paid within thirty (30) days after the due date shall bear interest from the due date at the rate of eighteen percent (18%) per annum. The Board of Directors may assess a late fee in an amount determined by the Board of Directors from time to time in the event any assessment is not timely paid. The Association may bring an action at law against the Owner personally obligated to pay the same, or foreclose the lien against the Lot.

Article V also originally stated that an owner's personal obligation for past due assessments "shall not pass to his successors in title unless expressly assumed by them, or unless the Association causes a lien to be recorded in the Public Records of the County." But in 2010, this language was stricken and the Declaration was amended to read that "[a] Lot Owner shall be jointly and severally liable with the previous Lot Owner for all unpaid assessments that became due up to the time of transfer of title to the Lot." This amendment followed our legislature's creation of section 720.3085 in 2007, which made "[a] parcel owner . . . jointly and severally liable with the previous parcel owner for all unpaid assessments." *See* ch. 2007-183, § 1, Laws of Fla.

In adopting section 720.3085 in 2007, the legislature also included a provision stating that an association "may bring an action in its name to foreclose a lien for unpaid assessments . . . and may also bring an action to recover a money judgment for the unpaid assessments." *See id.* This language appears in subsection (1)(c) of the applicable statute, *see*

5

§ 720.3085(1)(c), and it is the language on which the Association relies in this action. The 2010 amendment to the Declaration did not reference or include this language, but it has existed in the statute since 2007. *See* ch. 2007-183, § 1, Laws of Fla.

**B.     The Appellants' Arguments**

There is no dispute that under the governing authorities, subsequent owners—like the appellants here—are jointly and severally liable for past due assessments that accrued before they took title to the property. But the appellants dispute the Association's ability to hold them liable, arguing that a single sentence in article V, section 8, of the Declaration—and effectively a single word in that sentence—limits the Association to a single remedy: either an action at law "or" foreclosure of a lien. We disagree.

"Our goal in contractual interpretation is to arrive at a reasonable interpretation of the entire agreement, and to construe contractual terms in such a manner as to give them a meaning consistent with the apparent object of the parties in entering into the contract." *Fitness Int'l, LLC*, 361 So. 3d at 919 (citation modified). Here, the object of article V is clear; it obligates owners to pay assessments and explains what happens if they don't. Section 1 provides that assessments "*shall be* a continuing lien" on the property and that they "*shall also be* the personal obligation" of whoever owned the property at the time the assessments were due. (Emphasis added.) This language, together with the title of section 1, evidences an intent to create both a lien "and" a personal obligation for assessments.

Section 8 of that same article later discusses the "Effect of Nonpayment" and the "Remedies of the Association," as its title plainly indicates. The parties significantly used the plural form of the word

6

"Remedies" in the title, suggesting an intent to provide the Association with more than one option if an owner fails to pay. Section 8 then notifies owners of the interest and late fees they might be subject to, and it follows with the sentence that is at the crux of this appeal: "The Association may bring an action at law against the Owner personally obligated to pay the same, or foreclose the lien against the Lot."

In isolation, this sentence may be read to limit the Association to only one remedy. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 116 (2012) (explaining conjunctive/disjunctive canon). We can't read this sentence in isolation, however; the law requires us to "strive to read a contract in a way that gives effect to all of the contract's provisions." *See Retreat at Port Islands, LLC v. Port of Islands Resort Hotel Condo. Ass'n*, 181 So. 3d 531, 533 (Fla. 2d DCA 2015); *cf.* Scalia & Garner, *supra*, at 167 ("Perhaps no interpretative fault is more common than the failure to follow the whole-text canon . . . ."). And interpreting this sentence as the appellants propose—as a bar to this action because the Association first obtained a foreclosure judgment—would upend the entire liability scheme that article V creates.

Under article V, unpaid assessments result in a lien on the property *and* the owner still has a personal obligation to pay them. This personal obligation does not disappear when the lien attaches, or vice versa. But if we interpret section 8 to prohibit the Association from enforcing one of these obligations, the other would disappear and either the lien or the owner's personal obligation would be meaningless. Such an interpretation is inconsistent with the mandates of section 1, which specify that a lien *shall* attach and that an owner *shall also be* personally obligated for assessments.

The disputed sentence in section 8 also does not contain any restrictive language that would support the appellants' interpretation, such as words suggesting that the Association shall have only one remedy or can't under any circumstance pursue both remedies. A separate provision later in the Declaration further shows that this was not the intent. Article XIII, section 2, entitled "Enforcement," states: "The Association . . . *shall have* the right to enforce, *by any proceeding at law or in equity*, all restrictions, conditions, covenants, reservations, liens[,] and charges now or hereafter imposed by the provision of this Declaration." (Emphasis added.) The appellants' interpretation clashes with this broad and unrestrained right of enforcement that article XIII, section 2, conveys to the Association.

The appellants nonetheless argue that the 2010 amendment to the Declaration proves their interpretation right. They submit that the lack of any reference to section 720.3085(1)(c) or similar text in the amendment shows that the parties did not intend to adopt the statutory language that allows an association to bring a civil action "and" foreclose a lien for unpaid assessments. We do not read so much into it, nor does the entire text of the Declaration support this cramped interpretation for the reasons explained above. Indeed, section 720.3085 is a lengthy statute, and the amendment's lack of an express reference to or incorporation of every provision does not mean that the parties are not subject to the statute's terms. If anything, the 2010 amendment—which did an about-face on successor owner liability and established that subsequent owners "shall be jointly and severally liable" for unpaid assessments—supports an interpretation that allows the Association to

8

sue subsequent owners who *shall be* liable for, but who fraudulently attempted to avoid paying,[2] past due assessments.[3]

The appellants also urge us to follow the Fourth District's holding in *Pudlit 2 Joint Venture, LLP v. Westwood Gardens Homeowners Ass'n*, 169 So. 3d 145 (Fla. 4th DCA 2015), which involved the interpretation of a homeowners' association declaration. *Pudlit* is nothing like this case, however. There, the text of the declaration clearly stated that "[t]he personal obligation for delinquent assessments shall not pass" to subsequent owners, which directly conflicted with the joint and several liability of subsequent owners that section 720.3082(2)(b) creates. *Id.* at

_____

[2] The trial court found that the appellants "engaged in fraudulent behavior to avoid paying assessments" and created sham documents "for the purpose of defrauding the Association," and the judgment likewise holds the appellants liable on the Association's counts for conspiracy and fraudulent transfer. The appellants did not appeal these rulings.

[3] We also note that as originally drafted, the Declaration did not contemplate successor owner liability. And because joint and several liability of subsequent owners was not a consideration of the original drafters, we cannot say that they intended for article V, section 8, to prohibit the Association from holding subsequent owners jointly and severally liable for assessments. This is consistent not only with our interpretation of the Declaration as a whole, but with the very language that underpins the appellants' arguments.

That is, article V, section 8, provides that the Association may bring an action "*against the Owner personally obligated to pay the same*, or foreclose the lien against the Lot." (Emphasis added.) Section 1 identifies the "Owner personally obligated to pay" as the "person or persons who were the Owner of such property at the time when the assessment fell due." The 2010 amendment did not alter this language, nor did it name subsequent owners as "Owner[s] personally obligated to pay"; it instead made subsequent owners jointly and severally liable. While this may be a matter of nomenclature, section 8—and any limitation the appellants contend it creates—arguably doesn't even apply to an action seeking to hold a subsequent owner jointly and severally liable because that owner is not an "Owner personally obligated to pay" under the terms of the Declaration.

9

148 (emphasis omitted). The Fourth District was thus required to decide whether the application of the statute unconstitutionally impaired the parties' contract rights under the declaration, and the Fourth District concluded that it did. *See id.* at 149, 151.

Here, there is no conflict between the instant Declaration, when read in its entirety, and section 720.3085. Even if there was, and even if we were to decide whether allowing the Association to sue the appellants under section 720.3085(1)(c) unconstitutionally impairs the parties' contract rights, the outcome would be the same. "An impairment occurs . . . when a contract is made worse or is diminished in quantity, value, excellence[,] or strength." *Lawnwood Med. Ctr., Inc. v. Seeger*, 959 So. 2d 1222, 1224 (Fla. 1st DCA 2007) (citing *Pomponio v. Claridge of Pompano Condo., Inc.*, 378 So. 2d 774, 781 n.41 (Fla. 1979)). In this instance, the Declaration would not be made worse by allowing the Association to pursue an action against subsequent owners to hold them jointly and severally liable for unpaid assessments. Again, the Declaration states that subsequent owners *shall be* jointly and severally liable, and recovery of assessments are critical to the Association's ability to function and fulfill its maintenance and other duties under the Declaration.

As we've explained, "courts must strive to interpret a contract in such a way as to give meaning to all provisions while doing violence to none." *Bethany Trace Owners' Ass'n v. Whispering Lakes I, LLC*, 155 So. 3d 1188, 1191 (Fla. 2d DCA 2014). We likewise "will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so." *Id.* (quoting *Moore v. State Farm Mut. Auto. Ins.*, 916 So. 2d 871, 877 (Fla. 2d DCA 2005)). The only reasonable interpretation of the provisions before us leads to a

single conclusion: the Declaration does not bar the Association from pursuing an action for damages against the appellants.

## Conclusion

Because section 720.3085(1)(c) authorizes the Association's action against the appellants, and the Declaration does not prohibit it, we affirm the final judgment for the Association.

Affirmed.

MORRIS, J., Concurs.
ATKINSON, J., dissents with opinion.

ATKINSON, Judge, Dissenting.

The appellants maintain that the Association cannot both foreclose a lien for unpaid assessments and also recover damages for those assessments, based on the terms of the Declaration of Covenants and Restrictions for their subdivision. The Association argues, and the majority agrees, that section 720.3085(1)(c), Florida Statutes (2016), and the language of the Declaration permit it to pursue both remedies. I would reverse the final judgment awarding damages to the Association, and I respectfully dissent from the majority opinion affirming the judgment.

The trial court erred by concluding that under section 720.3085(1)(c) and the language of the Declaration, the Association has a right to both (1) bring an action for damages *and* (2) foreclose a lien on the property in question. The majority misplaces reliance on the mandatory language of section 1 of the Declaration, noting that it provides that assessments "*shall be* a continuing lien" on the property and that they "*shall also be* the personal obligation" of whoever owned the property at the time the assessments were due. (Emphasis added.)

11

The majority observes that, together with the title of section 1, the language of section 1 indicates the parties intended to create both a lien "and" a personal obligation for assessments. The majority contends that to enforce section 8 as a requirement to elect between these two available remedies would be inconsistent with the mandatory language of section 1. But section 1 simply provides which remedies are available, and section 8 serves the different purpose of imposing an obligation to choose between them. Applying the ordinary meaning of the latter section, which employs the disjunctive "or" when describing what remedies the Association is permitted to pursue, does not render it incompatible with section 1.

Indeed, the concept of an election of remedies provision *presupposes* that more than one remedy is available. In defiance of this axiomatic presupposition, the majority concludes that a contract provision listing available remedies is inconsistent with a contract provision requiring an election of remedies. By the majority's rationale, in any contract in which multiple available remedies are listed, a stand-alone election of remedies provision is rendered a nullity. Common experience demonstrates the majority's rationale to be unsound. Statutory provisions and contracts often provide multiple remedies and yet require parties to make an election from among those remedies. *See, e.g., Mori v. Fortune Cap. Partners, Inc.*, 316 So. 3d 744, 745–46 (Fla. 3d DCA 2021) (holding that "the remedies available in the event of title defects were limited by" contract, which also allowed the buyer to "either (1) terminate the contracts or (2) accept title subject to existing defects and close the transaction without reduction in purchase price" if the seller did not cure a title defect (emphasis omitted)).

12

Here, there is nothing in the Declaration, or in the context of section 8 itself, that indicates "or" should be used conjunctively. Leaving aside its misplaced reliance on the statute, the Association's only textual argument relies on the purported incompatibility with section 1. The Association argues that the use of the conjunctive word "and" in the title to section 1 ("Creation of the Lien *and* Personal Obligation of Assessments" (emphasis added)) implies the exclusion of any disjunctive words in section 8. The majority agrees, and apparently reasons that the parties' use of the plural form of the word "Remedies" in the title of section 8 ("Effect of Nonpayment of Assessments: Remedies of the Association") also suggests an intent to provide the Association with more than one option if an owner fails to pay—and entitles the Association to exercise both. But the textual indicators relied upon by the majority do not indicate whether the options are mutually exclusive; the fact that there is more than one option does not itself indicate they are both available.

A fair reading of the text according to the ordinary use of the word "or" in context indicates that they *are* mutually exclusive. Indeed, "use of 'the word "or" usually implies a discretion when it occurs in a directory provision, and a choice between two alternatives when it occurs in a permissive provision.' " *Lloyd Citrus Trucking, Inc. v. State Dep't of Agric. & Consumer Servs.*, 572 So. 2d 977, 978 (Fla. 4th DCA 1990) (quoting *Pompano Horse Club, Inc. v. State*, 111 So. 801, 805 (Fla. 1927)). Similarly, while a prohibitionary phrase or one cast in the negative can indicate that the use of "or" is conjunctive—e.g., a homeowner *may not* place her trashcans at the curb prior to the garbage pickup day *or* leave them at the curb after garbage pickup day—a permissive phrase cast in the positive—e.g., the Association *may* sue the homeowner personally *or* foreclose on the lien—usually indicates that the use of "or" is disjunctive

13

and an election between two alternatives is required. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 119 (2012) ("This singular-negation effect, forbidding doing *anything* listed, occurs when the disjunctive *or* is used after a word such as *not* or *without. . . .* The principle that 'not A, B, *or* C' means 'not A, not B, *and* not C' is part of what is called *DeMorgan's theorem.*"); *see id.* at 122 (explaining that the phrase "*Each of the following* remedies is available to a member" "probably" requires a member to "[c]hoose one" but is "ambiguous," the meaning depending on "whether the listing uses *and* or *or*"); *see also Gadson v. State*, 429 So. 3d 1052, 1053–54 (Fla. 5th DCA 2025) (interpreting rule 3.850(b)(1)'s admonition that "the facts on which the claim is predicated were unknown to the movant *or the movant's attorney*" to require that a newly discovered fact was unknown to *both* the movant *and* the movant's attorney, explaining that although " 'or' is a disjunctive term, . . . according to De Morgan's theorem, when it is used after a negative, both of the listed items are negated"); *Valadez-Lara v. Barr*, 963 F.3d 560, 567 (6th Cir. 2020) (suggesting that " 'or' could be read as an 'and' because the statute requires proof of a negative," requiring that "[i]mmigrants must demonstrate that they did not receive notice in conformity with 'paragraph (1) *or* (2)' " (citing 8 U.S.C. § 1229a(b)(5)(C)(ii))).

Yet, in contravention of normal usage, the trial court concluded that use of the word "or" in the permissive provision at issue in this case did not require a choice between two alternatives because it "does not contain any *other* disjunctive language . . . such as 'either,' 'either...or,' 'either seeking judgment or foreclosure,' or any other similar, explicitly disjunctive language." (Emphasis added.) However, there is no categorical requirement that "either" be employed to give "or" a

disjunctive meaning, and neither the trial court nor the Association rely on any authority to support such a requirement. Rather, the disjunctive is the typical sense of the word "or" unless the context indicates otherwise. *See Burns v. State*, 361 So. 3d 372, 378 n.5 (Fla. 4th DCA 2023) ("[W]hen the Legislature uses the word 'or' in a statute it is to be interpreted in the disjunctive indicating 'that alternatives were intended[.]' " (quoting *Sparkman v. McClure*, 498 So. 2d 892, 895 (Fla. 1986))); Scalia & Garner, *supra*, at 116 ("The conjunctions *and* and *or* are two of the elemental words in the English language. Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives. Competent users of the language rarely hesitate over their meaning.")

The Association also argues that although section 8 provides that the Association "may bring an action at law against the Owner personally obligated to pay the same, *or* foreclose the lien against the Lot[,]" (emphasis added) any ambiguity in section 8 should be resolved in favor of serving the purpose of article V. Section 1 was amended pursuant to the Fifth Amendment to the Declaration to provide that "[a] Lot Owner shall be jointly and severally liable with the previous Lot Owner for all unpaid assessments that became due up to the time of transfer of title to the Lot[,]" and the Association correctly notes that this amendment clarifies that article V of the Declaration was intended to make subsequent lot owners liable for back-owed assessments, just as the appellants became liable for the prior owners' back-owed assessments on the property.

But this amendment did not alter or expand the *remedies available to* the Association, but rather the *persons liable for* assessments; it did not affect the election of remedies between a legal action based on such liability and an equitable action to foreclose the lien. The appellants

15

point out the logical flaw that follows from the Association's suggestion (and the majority's conclusion) that expanding the persons liable for assessments must have meant the Association could pursue both remedies; the Association only amended section 1 of its Declaration when it could have—but did not—amend section 8's remedies clause.

The majority notes that the operative amendment followed the legislature's creation of section 720.3085 in 2007, which made "[a] parcel owner . . . jointly and severally liable with the previous parcel owner for all unpaid assessments." *See* ch. 2007-183, § 1, Laws of Fla. In adopting section 720.3085 in 2007, the legislature included a provision stating that an association "may bring an action in its name to foreclose a lien for unpaid assessments . . . and may also bring an action to recover a money judgment for the unpaid assessments." *See id.* However, the amendment to section 1 of the Declaration and the statute concerned *who* was liable. In contrast, section 8's election-of-remedies provision has to do with whether the Association can sue based on that liability or foreclose on the lien. Nonetheless, the trial court used the Association's decision to amend section 1 to read ambiguity into section 8's remedies clause, even though that section clearly employs *alternative* language while the statute employs *cumulative* language. The Association subsequently chose to amend the declaration—but only to alter *who* was liable consistent with the statutory amendment. Conspicuously, the Association did not alter the declaration to ensure the availability of remedies consistent with the other statutory amendment enacted in the same bill. Article V creates personal liability and a lien against the property and requires a party to choose between the two.

16

The trial court determined that because the Declaration and section 720.3085 offer the same overall remedies, "there is no conflict between [them,]" so imposing the dictates of the statute onto the Declaration does not impair contractual rights. But if the statute provides that multiple remedies are available to the Association and the contract limits the Association to mutually exclusive remedies, then elevating the statute over the ordinary meaning of the language of the contract impairs the contract.

Limiting the Association to the choice of one of two available remedies does not negate the *existence* of more than one remedy. The owner still has a personal obligation to pay, and the unpaid assessments are still a lien on the property. According to the text of the Declaration, the parties merely agreed that the Association must choose to get the money by foreclosing on the lien or by bringing a legal action against the owner, but not both.[4]

Imposing the amended statute's requirement to afford both remedies on the Declaration would constitute an impairment of the latter. The majority's rationale to the contrary is based on an unjustifiable limitation of the language of the constitutional protection against impairment of contracts. The constitution protects against the impairment of an *obligation* of a contract. Art. I, § 10, Fla. Const. So, if application of a statute would obviate a party's contractual obligation—

---

[4] There are other material differences between the Declaration and section 720.3085(1)(c) in addition to the use of "or" versus "and." Notably, the statute includes the phrase "without waiving any claim of lien" while the Declaration does not, lending further support to the argument that the legislature deemed it necessary to clarify the available pool of remedies while the Association and other parties to the Declaration understood that they were operating under a one-or-the-other election of remedies framework.

17

say, an obligation to perform or an obligation to choose between available remedies—such application would be unconstitutional, regardless of whether "a contract is made worse or is diminished in quantity, value, excellence or strength." *See Pudlit 2 Joint Venture, LLP v. Westwood Gardens Homeowners Ass'n,* 169 So. 3d 145, 150 (Fla. 4th DCA 2015) (quoting *Lawnwood Med. Ctr., Inc. v. Seeger,* 959 So. 2d 1222, 1224 (Fla. 1st DCA 2007)).

The Association also suggests that interpreting section 8's election of remedies provision as the appellants propose—as a bar to this action because the Association first obtained a foreclosure judgment—would upend the entire liability scheme that article V creates. The majority relies on the Declaration's article XIII, section 2, entitled "Enforcement," which uses mandatory language to provide that "[t]he Association . . . *shall have* the right to enforce, *by any proceeding at law or in equity*, all restrictions, conditions, covenants, reservations, liens[,] and charges now or hereafter imposed by the provision of this Declaration." (Emphasis added.) But here, the specific controls over the general. *See Cypress Gardens Citrus Prods., Inc. v. Bowen Bros.,* 223 So. 2d 776, 778 (Fla. 2d DCA 1969) ("When a conflict arises under a contract, and such conflict requires construction of possibly inconsistent provisions thereof, the general rule of construction requires that provisions stated in general terms must yield to those stated in specific terms." (first citing *Proser v. Berger,* 132 So. 2d 439, 441 (Fla. 3d DCA 1961); and then citing *Suncoast Bldg. of St. Petersburg, Inc. v. Russell,* 105 So. 2d 809, 810 (Fla. 2d DCA 1958))); *McKendry v. State,* 641 So. 2d 45, 46 (Fla. 1994) ("[A] specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms."). *Generally,* the Association has the right to a legal action or an equitable

18

action to enforce restrictions, conditions, covenants, reservations, liens, and charges. But its available remedy specifically to recover unpaid assessments is limited to *either* a legal action against the owner(s) personally obligated to pay them *or* foreclosure of the lien on the property.

The majority takes issue with the fact that interpreting section 8 to prohibit the Association from enforcing both available remedies may obviate the appellants' personal obligation to pay unpaid assessments that result in a lien on the property. But again, parties that create two possible remedies can decide to limit themselves to a choice of one, and just because it may ostensibly lack practical sense does not mean that is not what the agreement says. Similarly, the majority's concern that the recovery of assessments is critical to the Association's ability to function and fulfill its maintenance and other duties under the Declaration does not inform the interpretive question of whether the *language* of the contract requires an election of remedies. "Under Florida law, which governs this dispute, 'courts may not rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship or improvident bargain.' " *Pudlit*, 169 So. 3d at 148 (quoting *United States v. Bridgewater Cmty. Ass'n*, 2013 WL 3285399, at *9 (M.D. Fla. June 27, 2013)).

### Conclusion

Because a fair reading according to the ordinary meaning of the language of the Declaration requires an election of one remedy *or* the other, the Association cannot both foreclose a lien for unpaid assessments *and* recover damages for those assessments. Thus, the final judgment for the Association should be reversed.

19

I respectfully dissent.

_____

Opinion subject to revision prior to official publication.